UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DOUGLAS TALBOT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SENTINEL INSURANCE COMPANY, LTD.; HARTFORD FIRE INSURANCE COMPANY; RAYMOND JACQUES SAMOKHVALOV, individually; DOES I through X; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | Case No. 2:11-cv-01766-MMD-CWH<br><br>ORDER<br><br>(Def.'s Motion to Dismiss – dkt. no. 6)<br>(Def.'s Joinder to Motion to Dismiss – dkt. no. 9)<br>(Def.'s Partial Motion to Dismiss – dkt. no. 10)<br>(Plf.'s Motion for Leave to File a Second Amended Complaint – dkt. no. 33) |

**I.   SUMMARY**

Before the Court are Defendant Raymond Jacques Samokhvalov's ("Samokhvalov") Motion to Dismiss (dkt. no. 6), which Defendant Hartford Fire Insurance Company ("Hartford") joins (dkt. no. 9); Defendant Hartford's Partial Motion to Dismiss (dkt. no. 10); and Plaintiff Douglas Talbot's ("Talbot") Motion for Leave to File a Second Amended Complaint (dkt. no. 33).

**II.   BACKGROUND**

On March 27, 2008, Defendant Samokhvalov, while driving his 1996 Nissan standard pickup, collided with Plaintiff Talbot's 2006 GMC Sierra on or near Gowan Road in Las Vegas, Nevada. (Dkt. no. 1 at ¶ 8.) Samokhvalov's car insurance provider was Defendant Hartford.

On February 17, 2010, Talbot filed a complaint against Samokhvalov in Nevada state court seeking to recover monetary damages for injuries he allegedly suffered from the car accident. At the time of the accident Samokhvalov's insurer was Defendant Hartford. The case settled for a sum of $250,000 on March 31, 2011. The parties signed a settlement agreement in which Talbot agreed to release and forever discharge Hartford and Samokhvalov from all consequences of the car accident and agreed to dismiss the pending state court action with prejudice. Talbot alleges that before and during settlement negotiations concerning the state court action, Defendant Hartford repeatedly informed Talbot and his counsel that the total available insurance for Talbot's claim against Samokhvalov was $250,000. (*See* dkt. no. 1 at ¶¶ 13, 17, 18-19, 29.)

However, after settling his claims with Defendants, Talbot made a claim with his underinsured motorist carrier. (Dkt. no. 1 at ¶ 30). Although his carrier initially accepted and agreed to tender benefits deemed owed to Talbot under the underinsured motorist policy, the carrier later denied the claim after it was informed by Defendant Hartford that the true limit on Samokhvalov's insurance policy with Hartford was $1,250,000. (*Id.* at ¶ 30.) Talbot alleges that Defendants knew or should have known that during settlement negotiations regarding the state court action, Talbot and his counsel were operating under the mistaken belief that the maximum Talbot could recover from Hartford under Samokhvalov's insurance was $250,000.

Because of these alleged misrepresentations, Talbot filed this action in the Eighth Judicial District of Nevada on October 11, 2011. (Dkt. no. 1 at 1.) Defendant Samokhvalov subsequently removed the case to this Court on the basis of its diversity jurisdiction. (Dkt. no. 1.) Talbot's First Amended Complaint ("FAC") alleges four causes of action: (1) unilateral mistake and rescission of contract; (2) fraudulent inducement/ intentional misrepresentation; (3) violation of the Unfair Claims Practices Act, NRS § 686A.310(1); and (4) unjust enrichment. Talbot alleges that he has incurred several hundred thousand dollars in damages in the form of medical expenses, lost earnings, property damages, and deterioration of his quality of life. (Dkt. no. 1 at ¶¶ 9-10.)

Defendant Samokhvalov filed a Motion to Dismiss (dkt. no. 6), which Defendant Hartford joins (dkt. no. 9). Defendant Hartford also filed a Partial Motion to Dismiss (dkt. no. 10), moving to dismiss counts three and four of the FAC.

On July 13, 2012, Talbot filed a Motion for Leave to File a Second Amended Complaint ("SAC"). (Dkt. no. 33.) He asks the Court leave to file a SAC in order to "add a cause of action/remedy for Unilateral Mistake/Reformation[.]" (Dkt. no. 33 at 4.)

### III.   MOTIONS TO DISMISS

#### A.   Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does

not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

Moreover, a complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

### B. Defendant Samokhvalov's Motion to Dismiss

#### 1. Unilateral Mistake and Fraudulent Inducement Claims[1]

Samokhvalov's primary argument as to why both of these claims must be dismissed is that Samokhvalov was not involved in the settlement negotiations giving rise to this lawsuit. (Dkt. no. 6 at 4.) Rather, Samokhvalov argues that all of Talbot's allegations concern Defendant Hartford, and all of the allegedly misleading statements made during the settlement negotiations involved Defendant Hartford. (*Id.*) In its Joinder Motion, Hartford similarly argues that Talbot has not sufficiently pled any claims against Defendant Samokhvalov because Talbot does not allege that Samokhvalov made any misrepresentations during the course of the settlement negotiations. (Dkt. no. 9 at 4.)

The Court determines that Defendant Samokhvalov, as the insured, was a party in interest to the underlying settlement agreement. He cannot be dismissed merely

---

[1] Defendants argue that Talbot cannot seek rescission of a settlement agreement without first attempting to vacate the court order granting the stipulation to dismiss with prejudice. However, the consent decree only bars Talbot from bringing the same causes of action dismissed in the settlement agreement. *See Willerton v. Bassham, by Welfare Div., State, Dept. of Human Res.*, 889 P.2d 823, 827 (Nev. 1995). Because this case does not involve the same causes of action as those in the 2010 state court case and subsequent settlement, Talbot's failure to vacate the state court's consent decree is not fatal to his case. *See id.*

because most of the allegations in the FAC relate to misrepresentations made by Defendant Hartford. This is because, typically, the "attorney's neglect is imputed to his client, and the client is held responsible for it." *Lange v. Hickman*, 544 P.2d 1208, 1209 (Nev. 1976); *see also Arteaga v. Ibarra*, 858 P.2d 387, 390 (Nev. 1993). This principle holds true for an insured represented by his insurer's counsel. Without Samokhvalov's involvement, this case and the disputed settlement agreement would not exist. Because of the alleged misrepresentations Samokhvalov's insurer and the attorneys who were retained by Defendant Hartford to represent Samokhvalov made on his behalf during the settlement negotiations, unilateral mistake and fraudulent misrepresentation may be viable causes of action against Samokhvalov.

The Court accordingly denies Defendant Samokhvalov's Motion to Dismiss as to these claims.

### 2. Unfair Claims Practices Act – NRS § 686A.310

NRS § 686A.310 designates certain acts by insurers taken against their insured to be unfair claims practices. Third parties do not have standing to sue insured persons under the Act. *See Wilson v. Bristol W. Ins. Group*, 209-CV-00006, 2009 WL 3105602, at *2 (D. Nev. Sept. 21, 2009). This claim is accordingly dismissed against Defendant Samokhvalov.

### 3. Unjust Enrichment

"An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) (citing 66 Am. Jur. 2d Restitution § 6 (1973)). "The doctrine of unjust enrichment or recovery in quasi-contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Leasepartners*, 942 P.2d at 187.
///

Here, all parties agree that the settlement agreement constitutes an express, written agreement. Therefore, Talbot cannot bring a cause of action for unjust enrichment because this is not a situation where two or more parties entered into a quasi-contractual relationship. The Court accordingly grants Defendant Samokhvalov's Motion to Dismiss regarding this claim.

### C. Defendant Hartford's Partial Motion to Dismiss

Defendant Hartford moves to dismiss Talbot's claims against the insurance company for violation of NRS § 686A.310 and unjust enrichment.

#### 1. Nevada's Unfair Claims Practices Act – NRS § 686A.310

Talbot does not have standing to sue Hartford under NRS § 686A.310. "No private right of action as a third-party claimant is created under NRS 686A.310." *Wilson*, 2009 WL 3105602, at *2 (citing *Gunny v. Allstate Ins. Co.*, 830 P.2d 1335, 1336 (Nev. 1992); *Crystal Bay General Imp. Dist. v. Aetna Cas. & Sur.*, 713 F. Supp. 1371, 1377 (D. Nev. 1989)). "Further, a third-party claimant has no contractual relationship with an insurance company. . . . [t]hus, where a party has no contractual relationship with an insurance company, he lacks standing to sue." *See id.* (internal citation omitted); *Gunny*, 830 P.2d at 1335.

Talbot's policy arguments to the contrary are unavailing. (*See* dkt. no. 15 at 8.) The law in Nevada is clear: third-party claimants may not bring claims against insurers or their insured under NRS § 686A.310. *See* NRS § 686A.310 ("an insurer is liable *to its insured* for any damages sustained by the insured as a result of the commission of any act set forth [in the statute] as an unfair practice.") (emphasis added); *see also Gunny*, 830 P.3d at 1336; *Tweet v. Webster*, 614 F. Supp. 1190, 1195 (D. Nev. 1985). This claim is accordingly dismissed against Hartford.

#### 2. Unjust Enrichment

The Court dismisses this claim against Defendant Hartford for the same reasons discussed regarding Defendant Samokhvalov, *supra* in Part (III)(B)(3).

///

### III. MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Although leave to amend a complaint is liberally granted under Fed. R. Civ. P. 15, "leave to amend need not be granted if the proposed amended complaint would subject to dismissal." *Bellanger v. Health Plan of Nev., Inc.*, 814 F. Supp. 914, 916 (D. Nev. 1992) (citing *United Union of Roofers, Waterproofers, and Allied Trades No. 40 v. Insurance Corp. of Am.*, 919 F.2d 1398 (9th Cir.1990)); *see also Johnson v. Am. Airlines*, 834 F.2d 721 (9th Cir. 1987) ("[C]ourts have discretion to deny leave to amend a complaint for 'futility', and futility includes the inevitability of a claim's defeat on summary judgment.")

In his proposed SAC, Talbot would amend his FAC to add what he describes as a "cause of action" for reformation of contract based on unilateral mistake. However, in his Reply Brief, Talbot acknowledges that reformation of contract is not a cause of action but merely a theory of recovery. (Dkt. no. 40 at 2.)

Nevada courts recognize a remedy of reformation of contract when one party is mistaken as to the writing's contents or effect and the other party, although aware of the mistake, says nothing to correct the mistake. *See NOLM, LLC v. Cnty. of Clark*, 100 P.3d 658, 661 (Nev. 2004). "If a party's manifestation of assent is induced by the other party's fraudulent misrepresentation as to the contents or effect of a writing evidencing or embodying in whole or in part an agreement, the court at the request of *the recipient may reform the writing to express the terms of the agreement as asserted* . . . ." *NOLM*, 100 P.3d at 661 (citing Restatement (Second) of Contracts § 166 (1981)) (emphasis added).

As Defendant Hartford explains, "Plaintiff has not asserted . . . any factual allegations that support a claim that he was mistaken as to the content of the settlement agreement, or that the parties['] intent was to enter into an agreement for the amount of $1,250,000.00." (Dkt. no. 25 at 7.) This is correct. Allowing Talbot to amend his complaint to add a remedy for reformation of contract would be futile. The *NOLM* Court held that if one party relied on another's fraudulent misrepresentation in forming the

content of an agreement, then under a theory of contract reformation, the contract may be altered to express the terms intentionally agreed upon by the parties before the contract was written down in final form. 100 P.3d at 661. But here, even if Defendants misrepresented the total amount Hartford could provide under Samokhvalov's insurance plan, the parties never agreed to settle the case for $1.25 million dollars. While Talbot may be able to recover damages arising out of the alleged misrepresentations surrounding the settlement agreement under a theory of fraudulent misrepresentation, he cannot recover under a theory of reformation.

For these reasons, it would be futile for Talbot to file his proposed SAC in this Court. The Motion is accordingly denied.

**IV.   CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Samokhvalov's Motion to Dismiss (dkt. no. 6) and Defendant Hartford's Joinder to Defendant Samokhvalov's Motion to Dismiss (dkt. no. 9) is GRANTED in part and DENIED in part as follows:

- The Motion and Joinder Motion are DENIED as to Plaintiff's unilateral mistake and fraudulent inducement claims against Samokhvalov;
- The Motion and Joinder Motion are GRANTED as to Plaintiff's Unfair Claims Practices Act and unjust enrichment claims against Samokhvalov.

IT IS FURTHER ORDERED that Defendant Hartford's Partial Motion to Dismiss (dkt. no. 10) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File a Second Amended Complaint (dkt. no. 33) is DENIED.

DATED THIS 10th day of September 2012.

_____
UNITED STATES DISTRICT JUDGE